**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **LAVERN R. CRUMP,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-14-229 |
| | * | |
| **MONTGOMERY COUNTY EDUCATION ASSOCIATION,** *et al.*, | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION[1]

Plaintiff, a former teacher who is self-represented, brings this action against her union and its statewide affiliate alleging claims for breach of the duty of fair representation as well as discriminatory and retaliatory discharge under 42 U.S.C. § 1981. Defendant union moves to dismiss, alleging, *inter alia*, that Plaintiff's claims are time-barred. Because Plaintiff's claims arose no later than 2009 and Plaintiff did not commence this action until December 2013, Plaintiff's claims are time-barred and her case must be dismissed.

### I.   BACKGROUND

For purposes of considering Defendants' motion, this Court accepts the facts that Plaintiff has alleged in her complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

---

[1] This Memorandum Opinion disposes of Defendants Maryland State Educators' Association and Montgomery County Educators' Association's Motion to Dismiss ("Defs.' Mot."), ECF No. 9, and supporting Memorandum ("Defs.' Mem."), ECF No. 9-1; Plaintiff Lavern R. Crump's memorandum in Opposition ("Pl.'s Opp'n"), ECF No. 18; and Defendants' Reply (Defs.' Reply"), ECF No. 19.

This case is the second attempt by Plaintiff Lavern Crump to seek redress for her termination as a teacher for the Montgomery County Public School system ("MCPS").  In a prior case, Crump sought to bring claims against MCPS and certain of its employees, which were dismissed in October 2013.  *See Crump v. Montgomery Cnty. Bd. of Educ.*, No. PWG-12-3378, 2013 WL 5797632 (D. Md. Oct. 25, 2013) (*Crump I*).  In this case, Crump seeks to hold her labor union, Montgomery County Educators' Association ("MCEA"), and the statewide organization of which it is an affiliate, Maryland State Educators' Association ("MSEA"),[2] liable for the same underlying events.  *See* Am. Compl., ECF No. 2.  The facts surrounding Crump's termination are discussed at length in *Crump I*; accordingly, I will summarize only those allegations that particularly are relevant here.

According to her *pro se* Complaint, Plaintiff is an African–American woman who has been a primary school teacher for over thirty-five years, fifteen of which were spent teaching for MCPS.  Am. Compl. ¶ 1.  During the 2004–2005 school year, Crump expressed concerns that the school at which she taught was not doing enough to serve its minority students, an issue which had been of interest to her.  *Id.* ¶¶ 32–34.  In the 2005–2006 school year, Plaintiff was transferred to a new school, Bel Pre Elementary School in Silver Spring, Maryland, which had a larger minority population and where she was supervised by Principal Carmen Van Zutphen.  *Id.* ¶¶ 3–5.  Crump and Van Zutphen clashed repeatedly over Crump's teaching style and, although Crump had received positive reviews previously, Van Zutphen's review of Crump's performance indicated that she was "not meet[ing] standards."  *Id.* ¶¶ 27–47.  Crump alleges that this review was without factual justification, *id.* ¶¶ 48–50, and was not based on the factors that Van

---

[2] Plaintiff appears to have misidentified the names of both Defendants as "Montgomery County Education Association" and "Maryland State Education Association."  Notwithstanding the apparent error in the caption of this case, I will use the Defendants' correct names herein.

Zutphen was "contractual[ly]" obligated to consider under the relevant collective bargaining agreements ("CBAs") and that neither MCEA nor MSEA made any attempt to address the breaches. Am. Compl. ¶¶ 5–7.

As a result of this negative review, Crump was placed in the "PAR" Program for the 2006–2007 school year.[3]  Crump alleges that she was not provided with the documents considered by the PAR Panel and that the Panel accepted Van Zutphen's characterizations without independent consideration. *Id.* ¶¶ 52–53. Although Crump worked diligently to comply with the demands of the PAR Panel, she was continued in the PAR Program for the 2007–2008 school year and transferred to a new school, Beall Elementary School. *Id.* ¶¶ 58–61. Crump spent much of that school year on a medical leave of absence due to job-related stress. *Id.* ¶¶ 62–63. Crump alleges that MCEA "ignored the hostile work environment, the blatant retaliation and harassment tactics in place at Bel Pre during the 2005–2006 and the 2006–2007 school year," *id.* ¶ 9, and refused to file grievances on Crump's behalf, *id.* ¶ 8.

At this point, MCEA first became involved in Crump's difficulties and negotiated her transfer to another school, Piney Branch Elementary School in Takoma Park, Maryland, *id.* ¶ 64. Crump continued to receive poor evaluations through the PAR Program, and alleges that the teacher evaluating her did not devote sufficient time and energy to the evaluations, and that the PAR Panel made the decision to recommend her termination without seeking additional information. *Id.* ¶ 65–70. During this time, Crump alleges that "MCEA and [Montgomery County Public Schools] were equal partners and assumed joint responsibility for the PAR

---

[3] This allegation is not explicit in the Complaint, as Crump simply alleges actions taken by the PAR Panel without explaining its role. However, in *Crump I*, she had alleged that PAR is the "Peer Assistance and Review Program," which "provides support and mentoring for teachers who receive low ratings on their performance evaluations." *See Crump I*, 2013 WL 5787362, at *1.

program, the PAR panel," and other aspects of Crump's review process. *Id.* ¶ 18. Crump was placed on leave without pay in July 2008, *id.* ¶ 74, and following a hearing, Crump was informed of the final decision to terminate her in February 2009, *id.* ¶¶ 78–79.

Crump appealed the decision of the hearing officer to the Montgomery County Board of Education ("MCBOE"), apparently—though the Complaint is not clear—with representation provided by her union. *Compare* Am. Compl. ¶ 80 ("Plaintiff, pro se"), *with* Am. Compl. ¶ 81 (referring to actions of "the union attorney" at the hearing). According to Crump, "the union attorney . . . did not address the most pertinent issues during the evidentiary hearing," introduced no more than ten documents, and argued only that Crump should be given another year in the PAR Program. *Id.* ¶ 81.[4] Crump's termination was upheld by the MCBOE in April 2009. *Id.* ¶ 82.

After the MCBOE decision, Crump proceeded without counsel to appeal to the Maryland State Board of Education, which upheld the MCBOE's termination decision in April 2010 following an administrative hearing at which Crump alleges she was allowed only a limited opportunity to present her case. *Id.* ¶¶ 83–94. According to Crump, she was unable to retain legal representation because her union would not pay for her counsel out of its insurance policy. *Id.* ¶ 19. Crump proceeded to challenge her termination in the Circuit Court for Howard County, which ruled against her in August 2011, *id.* ¶ 99, and she filed her prior case in this Court in November 2012, *id.* ¶ 101, which was dismissed in October 2013, *Crump I*, 2013 WL 5797632.

Crump filed her original *pro se* Complaint in this case in the Circuit Court for Montgomery County on December 11, 2013, Compl., ECF No. 12-1, but amended before

---

[4] Though not entirely clear, it appears that the "union attorney" was provided by the MCEA, Crump's union, rather than by its statewide umbrella organization, MSEA.

serving, Certification of Filing of State Court Papers 1, ECF No. 12. Her three-count Amended Complaint alleges (I) "Breach of Contract/Due Process Violations"; (II) "Wrongful Discharge/Racial Discrimination" in violation of 42 U.S.C. § 1981; and (III) Retaliation in violation of 42 U.S.C. § 1981. Am. Compl. Defendants removed to this Court on January 27, 2014, Notice of Removal, ECF No. 1, and the next day filed a Motion to Dismiss ("Defs.' Mot."), ECF No. 9, and supporting Memorandum ("Defs.' Mem."), ECF No. 9-1. Crump has filed her Opposition ("Pl.'s Opp'n"), ECF No. 18, and Defendants have replied ("Defs.' Reply"), ECF No. 19; the motion now is fully briefed and is before me. Having reviewed the filings, I find a hearing is not required. Loc. R. 105.6.

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from

*Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

That said, "Factual allegations must be enough to raise a right to relief above a speculative level." *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 472–73 (D. Md. 2009) (quoting *Twombly*, 550 U.S. at 545). A plaintiff fails to state a claim where the allegations on the face of the complaint show that an affirmative defense would bar any recovery. *Jones v. Bock*, 549 U.S. 199, 214–15 (2007) (citing Fed. R. Civ. P. 8(c)); *see Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (noting that dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense"). Although Plaintiff is proceeding *pro se* and her complaint is to be construed liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), this does not absolve Plaintiff of her obligation to plead a plausible claim, *see Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

## III. DISCUSSION

### A. Count I: Breach of Contract/Due Process Violations

Count I of Crump's complaint appears to allege two distinct causes of action. The claim for "breach of contract," insofar as it alleges that Crump's union did not abide by its obligations under the CBA or take appropriate action in response to CBA violations by Crump's employer, appears to sound in a breach of the duty of fair representation under the Labor Management Relations Act, 29 U.S.C. § 185. Her "due process" claim, on the other hand, appears to allege constitutional violations by Defendants. Because Crump is *pro se*, I will construe her complaint liberally and consider each of these causes of action in turn.

A union's duty of fair representation was recognized in *Vaca v. Sipes*, 386 U.S. 171, 177 (1967), in which the Supreme Court held that the exclusive authority given to unions "to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Although not expressly provided for in § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185 and authorizing suits for breaches of collective bargaining agreements, a suit for the breach of the duty of fair representation has been described as "a hybrid § 301/fair representation claim," "which is implied under the scheme of the National Labor Relations Act." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1963); *see also Terry v. Chauffeurs, Teamsters & Helpers, Local 391*, 863 F.2d 334, 337–38 (4th Cir. 1988). The Supreme Court in *DelCostello* held that such actions are subject to the six-month limitations period provided in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello*, 462 U.S. at 154–55.

In calculating when the statute of limitations began to run, "[t]he general rule is that a cause of action accrues when the plaintiff knows or should have known that a violation of his rights has occurred." *Gilfillan v. Celanese Ag*, 24 F. App'x 165, 167 (4th Cir. 2001). Here, Crump's termination was final by April 2009 (when the MCBOE upheld her termination) at the very latest, Am. Compl. ¶ 82, and it is apparent that she already was dissatisfied with the performance of MCEA at that time, *see* Compl. ¶ 80. Having filed her initial Complaint in December 2013, over four years after any claim arose, Crump's claim for breach of the duty of fair representation is time-barred. Crump appears to concede as much, as her Opposition argues only for equitable tolling of the statute of limitations. *See* Pl.'s Opp'n 2–3. But because Crump does not allege that MCEA or MSEA wrongfully deceived or misled her with respect to whether

7

she had a cause of action, there is no basis to toll the statute of limitations here. *See Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 280–81 (4th Cir. 2000). Accordingly, this claim must be dismissed.

Nor can Crump maintain a claim for due process violations against either Defendant. It is well-settled that "the Fourteenth Amendment, which prohibits states from denying federal constitutional rights and which guarantees due process, applies to acts of the states, not to acts of private persons or entities." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982) (citing *Civil Rights Cases*, 109 U.S. 3, 11 (1883); *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). And similarly, 42 U.S.C. § 1983, which grants this Court jurisdiction to hear cases arising under the Constitution, applies only to persons acting "under color of" state law. Crump has pleaded no allegations to suggest that Defendants were controlled by or agents of the State, MCPS, or the MCBOE. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 ("[W]e say state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). And "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Accordingly, Crump cannot state a claim against Defendants for any alleged due process violations, and therefore Count I must be dismissed in its entirety.

### B. Counts II and III: Discrimination and Retaliation Under 42 U.S.C. § 1981

Crump also seeks to bring claims for discriminatory and retaliatory discharge pursuant to 42 U.S.C. § 1981. At the outset, both Count II and Count III comprise only allegations that MCPS, the MCBOE, and their employees discriminated and retaliated against Crump in the

context of her termination. Am. Comp. ¶¶ 121–35. The only allegation respecting Defendants is that they "tolerated" such actions as "complicit partners in the wrongful acts of the Montgomery County Schools." *Id.* ¶ 135. This does not suffice to "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 663, and therefore Crump has not stated a claim against Defendants.

Moreover, any such claims also are time-barred. In 1990, Congress provided for a uniform, four-year statute of limitations for all actions "arising under an Act of Congress enacted after" December 1, 1990. 28 U.S.C. § 1658. Although 42 U.S.C. § 1981 originally was enacted in 1866, Plaintiff's claims for wrongful termination—whether discriminatory or retaliatory—did not exist until the enactment of the Civil Rights Act of 1991 (the "1991 Act"), which amended § 1981. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372–73 (2004). Accordingly, the Supreme Court squarely has held that those claims "arise under" the 1991 Act and therefore are subject to the federal, four-year statute of limitations. *See id.* at 383.

The limitations period in a wrongful termination case begins to run at the time that an employment decision is made and communicated to the plaintiff—not when it takes effect or becomes final. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *see also Crump I*, 2013 WL 5797362, at *6 (applying *Ricks* to Crump's case). Although Crump continued to contest her termination, her Amended Complaint clearly alleges that she received notice of the decision to terminate her contract no later than February 2009. Am Compl. ¶ 79; *but see Crump I*, 2013 WL 5797362, at *6 (identifying November 18, 2008 as the latest possible date on which the limitations period began to run, based on slightly different allegations of fact by Crump). Assuming that the limitations period did not begin to run until February 2009, it expired no later

than February 2013, months before Crump filed her Complaint on December 11, 2013. *See* Compl.  Accordingly, her § 1981 claims are time-barred and must be dismissed.

### IV.   CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss shall be GRANTED. This case shall be DISMISSED and the Clerk shall CLOSE this case.

A separate order will issue simultaneously herewith.

Dated: <u>September 23, 2014</u>            _____/S/_____
                                            Paul W. Grimm
                                            United States District Judge

dsy